UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRIAN SANDUSKY, Plaintiff,

v. Civil Action No. 3:17-cv-516-DJH-CHL

ACUITY, A MUTUAL INSURANCE
COMPANY, et al., Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Sandusky was injured in an accident while riding in a car owned by his employer. (Docket No. 1-2) As a result, Sandusky has received payment from the at-fault driver's insurance company and workers' compensation benefits from the Kentucky Association of General Insurers Fund. (*Id.*) Sandusky brings this action against his employer's insurer, Acuity, seeking unpaid underinsured motorist benefits. (*Id.*) Sandusky also names the Fund as a defendant, denying the Fund's claimed right to reimbursement from any settlement or judgment he may receive as a result of bringing this action. (*Id.*) Acuity removed the action to this Court on the basis of diversity of citizenship (D.N. 1), and Sandusky has filed a motion to remand, arguing that complete diversity of the parties does not exist. (D.N. 7) Acuity opposes the motion, arguing that Sandusky fraudulently joined the nondiverse party, the Fund, to the case. (D.N. 8) Acuity has also filed an unopposed motion to bifurcate and stay discovery as to Sandusky's bad-faith claims. (D.N. 12) For the reasons explained below, the motion to remand will be denied, and the motion to bifurcate and stay discovery will be granted.

I.  BACKGROUND

In 2016, Sandusky suffered injuries in a car accident while riding as a passenger in a car owned by his employer. (D.N. 1-2, PageID # 12) Sandusky made a claim against the at-fault

1

driver, William Goodwin, and his insurer, State Farm. (*Id.*) State Farm offered Sandusky what it represented to be Goodwin's policy limit, and Sandusky accepted payment from State Farm and released Goodwin's estate from liability. (*Id.*, PageID # 12-13) Sandusky's damages exceeded Goodwin's coverage limits, however, and Sandusky demanded underinsured motorist benefits from Acuity, his employer's insurance carrier. (*Id.*, PageID # 12-13) Acuity ultimately offered to pay Sandusky only a small portion of his claim. (*Id.*, PageID # 16) Sandusky now asserts claims against Acuity for breach of contract and bad faith, arguing that it unreasonably delayed and denied his claim for underinsured motorist benefits. (*Id.*, PageID # 16-18)

Sandusky also received workers' compensation benefits from the Kentucky Association of General Insurers Fund, which provided workers' compensation insurance to his employer. (*Id.*, PageID # 18) According to the complaint, the Fund notified Sandusky that it would seek reimbursement of the benefits it paid to him from any settlement or judgment that may result from this action. (*Id.*) Sandusky names the Fund as a defendant in this action, denying the Fund's claimed right to reimbursement. (*Id.*)

Sandusky filed this action in Nelson County Circuit Court. (*Id.*, PageID # 11-19) Acuity removed the action to this Court, invoking the Court's diversity jurisdiction. (D.N. 1) Both Sandusky and the Fund are citizens of Kentucky, however. (*Id.*, PageID # 3) Sandusky has filed a motion to remand, arguing that the Court should send this action back to state court as complete diversity does not exist. (D.N. 7) Acuity argues that the Court maintains diversity jurisdiction, because Sandusky fraudulently joined the Fund against whom it has no colorable cause of action.[1] (D.N. 8)

---

[1] Sandusky asserts that Acuity's argument is actually based upon the doctrine of fraudulent *misjoinder*. (D.N. 7-1, PageID # 53) But, as Sandusky correctly points out (*id.*, PageID # 56), the fraudulent-misjoinder doctrine has not been adopted by the Sixth Circuit. *Kent State Univ.*

2

Acuity filed a motion to bifurcate and stay discovery as to Sandusky's bad-faith claims. (D.N. 12) Acuity argues that bifurcation and a stay of discovery as to those claims is appropriate because Sandusky's contract claims may be dispositive. (D.N. 12-1) Acuity certified that no party opposes the motion (D.N. 12, PageID # 100). No party filed a response to the motion, and it is therefore deemed unopposed. *See* LR 7.1(c).

## II. MOTION TO REMAND

### A. Standard

"When considering a motion to remand, the Court must examine whether the case was properly removed to federal court." *Graves v. Standard Ins. Co.*, 66 F. Supp. 3d 920, 922 (W.D. Ky. 2014) (citation and internal quotations omitted). Removal based on diversity jurisdiction requires both complete diversity and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a).

When a nondiverse party has been joined as a defendant—as here—then "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)). The relevant inquiry for a fraudulent-joinder claim is whether Sandusky "had at least a colorable cause of action against" the Fund in Kentucky state courts. *Jerome-Duncan*, 176 F.3d at 907. The question, then, "is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation and internal quotations omitted). If so, then joinder is proper, and the Court must

---

*Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013). And Acuity clearly relies upon the doctrine of fraudulent joinder in its notice of removal. (D.N. 1, PageID # 5-6) The Court's analysis will therefore be limited to fraudulent joinder.

3

remand the case to state court. *See Mason v. Excel Indus.*, No. 3:10-CV-175, 2011 WL 847449, at *2 (W.D. Ky. Mar. 9, 2011) (citing *Alexander*, 13 F.3d at 949).

The standard for determining whether a cause of action is colorable is more lenient than the Rule 12(b)(6) motion-to-dismiss standard. *Casias*, 695 F.3d at 433. "Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Hix v. Affiliated Computer Servs.*, No. 5:08-521, 2009 WL 2240548, at *2 (E.D. Ky. July 27, 2009) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)). The Court is permitted to "look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Walker v. Philip Morris USA, Inc.*, No. 3:13-CV-00560-CRS, 2014 WL 1319682, at *5 (W.D. Ky. Mar. 28, 2014) (quoting *Casias*, 695 F.3d at 433). But the Court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation and internal quotations omitted). "All doubts as to the propriety of removal are resolved in favor of remand." *Id.*

**B.    Analysis**

Sandusky's complaint makes only limited references to the Fund. The complaint alleges that the Fund "made payments to various entities and to [Sandusky] as a result of coverage through a Kentucky Worker's Compensation Insurance Plan provided by [Sandusky's] employer" and "notified [Sandusky] that it [was] making a claim for subrogation and/or reimbursement from any settlement or judgment in this claim for any compensation paid under the Worker's Compensation policy." (D.N. 1-2, PageID # 18) The complaint further "denies the Fund's claimed right to subrogation or reimbursement." (*Id.*)

4

Sandusky describes his alleged cause of action against the Fund differently in his motion-to-remand briefing, however. Instead of denying the Fund's right to subrogation or reimbursement, Sandusky now asserts that he and the Fund disagree as to whether the amount of the Fund's workers' compensation lien must be reduced by the amount of attorney fees Sandusky pays in bringing this action for underinsured motorist benefits. (D.N. 7-1, PageID # 52, 61; *see also* D.N. 10)

"In a case removed to federal court, '[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal.'" *Arrington v. Nationwide Mut. Fire Ins. Co.*, No. 3:14-cv-322-DJH, 2015 WL 852056, at *2 (W.D. Ky. Feb. 26, 2015) (quoting *Harper v. AutoAlliance Int'l*, 392 F.3d 195, 210 (6th Cir. 2004)). At the time of removal, Sandusky's complaint contained no allegations regarding the amount of the Fund's workers' compensation lien or the attorney fees Sandusky seeks to subtract from that amount. (*See* D.N. 1-2, PageID # 11-19) The only "claim" Sandusky brought against the Fund was his denial of the Fund's right to subrogation or reimbursement. (*See id.*, PageID # 18) Sandusky cannot rely on his arguments in the briefs regarding the lien and attorney fees to create a colorable cause of action where his complaint contained no such allegations. *See Arrington*, 2015 WL 852056, at *3 (finding no colorable allegations against nondiverse defendant where plaintiffs maintained that their claim against him was grounded in fraud but the complaint did not contain a claim of fraud against that defendant or any allegation that the defendant was involved in the transaction at issue); *see also id.* at *3 n.3 (ignoring assertion made in reply brief in determining fraudulent joinder because it was not alleged in the complaint).

Viewing the complaint as it existed at the time of removal, the Court finds that Sandusky has no "colorable cause of action" against the Fund. *Jerome-Duncan*, 176 F.3d at 907. While

Sandusky asserts that the Fund "is making a claim for subrogation and/or reimbursement from any settlement or judgment in this claim" (D.N. 1-2, PageID # 18), it is undisputed that the Fund has no right to any settlement or judgment that Sandusky might receive in this insurance action. Kentucky workers' compensation law provides:

> If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from *the other person in whom legal liability for damages exists*, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expense.

Ky. Rev. Stat. § 342.700(1) (emphasis added). The Kentucky Supreme Court has recognized that "'the other person in whom legal liability for damages exists' quite clearly refers to the third-party tortfeasor who is liable at common law." *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). Because "[a] payment made in performance of a contractual obligation is not a payment of 'damages,'" "the liability of an insurance company under its uninsured motorist coverage cannot be the 'legal liability for damages' mentioned in [Ky. Rev. Stat. § 342.700(1)]."[2] *Id.*

The Fund's right to reimbursement or subrogation is therefore limited to the damages Sandusky might have recovered from the third-party tortfeasor, Goodwin. The Fund has no right to any payment Acuity might make to Sandusky based on its contractual obligation to Sandusky's employer. *See Jewell v. Ky. Sch. Bd. Ass'n*, 309 S.W.3d 232, 235-36 (Ky. 2010) (reaffirming *State Farm* and holding that workers' compensation carrier had no right to recover from underinsured motorist carrier). Indeed, the Fund admitted this when its claims adjuster stated in an email to Sandusky's counsel: "As you well know, uninsured motorist recovery is not

---

[2] The Kentucky Supreme Court addressed Ky. Rev. Stat. § 342.055, which has since been repealed. However, as the court recognized, § 342.055 and the present statute, Ky. Rev. Stat. § 342.700(1), are substantially the same. *See State Farm*, 550 S.W.2d at 555-56.

something that we can attach to (we are not entitled to any money from UIM funds) . . . ." (D.N. 7-4, PageID # 65) Sandusky names the Fund in order to dispute a claim that the Fund acknowledges it does not make, and which is not permitted under Kentucky law. The Court thus finds no colorable cause of action against the Fund based on the allegations in Sandusky's complaint.[3]

The sparse allegations against the Fund, contained at the very end of Sandusky's complaint (*see* D.N. 1-2, PageID # 18), further support the conclusion that the Fund was joined solely to avoid federal jurisdiction. *See Arrington*, 2015 WL 852056, at *3 ("This dearth of explanation [in the complaint] persuades the Court that [the nondiverse defendant] was joined solely to avoid federal jurisdiction.").

The Court concludes that Sandusky fraudulently joined the Fund.

## III. MOTION TO BIFURCATE AND STAY DISCOVERY

Acuity moves the Court to bifurcate Sandusky's bad-faith claims from his breach-of-contract claims and to stay discovery on the bad-faith claims until the underlying contract claims have been resolved. (D.N. 12, PageID # 100) Because no party responded to Acuity's motion, the motion is deemed unopposed. *See* LR 7.1(c).

---

[3] In support of his argument that a colorable controversy exists, Sandusky points to a June 14, 2017 email in which the Fund's counsel told his counsel:
> If you end up filing suit, then I would appreciate being advised of the same. We will then intervene to protect our client's interests. It would be extremely helpful to us to know the actual (legal) named insurance companies for any of the policies at issue as we will likely have to name [them] in our Complaint in Intervention.

(D.N. 10, PageID # 91; D.N. 10-1, PageID # 98) Notably, the subject line of that email reads "[The] Fund vs. (Est of) William E Goodwin and Marsha Goodwin." (D.N. 10-1, PageID # 98) Thus, it appears that the Fund was interested in intervening in any action Sandusky brought against Goodwin. This is consistent with the Court's finding that the Fund has no right, and has asserted no right, to any payment that Sandusky might receive from Acuity through this insurance action.

A.  **Bifurcation**

Federal Rule of Civil Procedure 42(b) allows the Court to order a separate trial of one or more claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "In determining whether separate trials are appropriate, the court should consider several facts, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'" *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). "The language of Rule 42(b) places the decision to bifurcate within the discretion of the district court." *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996).

"Claims for coverage under an insurance agreement and claims of bad faith on behalf of the insurer are often bifurcated because 'if the plaintiff cannot prevail on the coverage issue, the claim for bad faith necessarily fails.'" *Emp'rs Mut. Cas. Co. v. SG&D Ventures, LLC*, No. 3:17-CV-00105-CRS-DW, 2017 WL 3082674, at *3 (W.D. Ky. July 19, 2017) (quoting *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11-CV-00054-R, 2011 WL 6012554, at *2 (W.D. Ky. Dec. 1, 2011)); *see also Royal Consumer Prods. v. Martin Indus.*, No. 3:15-CV-00830-CRS, 2016 WL 3080841, at *2 (W.D. Ky. May 31, 2016) ("Kentucky law does not provide a bad faith cause of action unless the plaintiff can also prove that the defendant had a contractual obligation to pay the underlying claim.").

All of the relevant factors weigh in favor of bifurcation here. Because Sandusky must be entitled to recovery under the Acuity policy to prevail on his bad-faith claims, bifurcation of the bad-faith and contract claims "will avoid the expense and time of litigating issues that may never arise." *SG&D Ventures*, 2017 WL 3082674, at *3. Bifurcation of the claims "will also assist the jury in focusing on a single issue at a time." *Id.* Finally, bifurcation will not prejudice the

parties, "because [Sandusky] will have an opportunity to pursue [his] bad faith claim if [he] is legally entitled to do so and because [Acuity] will be able to avoid any unnecessary and premature litigation on the issue of bad faith." *Id.* The Court will therefore grant Acuity's unopposed motion to bifurcate the bad-faith claims from the contract claims. *See Dippin' Dots v. Travelers Prop. Cas. Co. of Am.*, 322 F.R.D. 271, 274-76 (W.D. Ky. 2017) (concluding that bifurcation of bad-faith claim would convenience the Court and granting motion to bifurcate where "contract claim present[ed] a threshold issue that could moot [the plaintiff's] bad faith claim").

### B. Stay of Discovery

"[T]his Court is vested with the 'inherent authority to manage' its docket and affairs 'with a view toward the efficient and expedient resolution of cases.'" *Alvey v. State Farm Fire & Cas. Co.*, No. 5:17-CV-00023-TBR-LLK, 2017 WL 2798501, at *1 (W.D. Ky. June 28, 2017) (quoting *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016)). This inherent authority includes "the power to stay proceedings." *Id.* (quoting *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010)). In exercising this power, the Court must "weigh competing interests and maintain an even balance." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

"[B]ecause [Sandusky's] bad-faith claims turn on the success of [his] breach-of-contract claim, failure to issue a stay might result in needless discovery (and added expense)." *Id.* at *2. Moreover, Acuity "may be prejudiced if [joint discovery] occurs before it is clear whether [Sandusky] can even proceed with a bad faith claim by establishing a breach of contract." *Brantley*, 2011 WL 6012554, at *3 (quoting *Wolf v. Geico Ins. Co.*, 682 F. Supp. 2d 197, 199 (D.R.I. 2010)). The Court will therefore grant Acuity's unopposed motion to stay discovery on the bad-faith claims until the underlying contract claims have been resolved. *See Dippin Dots*,

9

322 F.R.D. at 275-76 (finding good cause to stay discovery on the plaintiff's bad-faith claim and granting motion to stay until breach-of-contract claim had been resolved).

## IV. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Sandusky's motion to remand (D.N. 7) is **DENIED**.

(2) Acuity's motion to bifurcate and stay discovery as to Sandusky's bad-faith claims (D.N. 12) is **GRANTED**.

May 1, 2018

**David J. Hale, Judge**
**United States District Court**